On petition filed January 17, reversed in part March 4, 1986

**DENNISON,**
*Petitioner on Review,*

*v.*

**OREGON STATE PENITENTIARY,**
*Respondent on Review.*

(No. 04-85-059; CA A35994; SC S32514)

715 P2d 88

PER CURIAM

## PER CURIAM

The issue is whether there is substantial evidence in the record to support a finding that the petitioner, an inmate of the Oregon State Penitentiary, knowingly engaged in conduct which constituted a substantial step toward manufacturing a weapon.

After a contested hearing, the hearings officer found that the petitioner had violated the following parts of Administrative Rule 291-105-015 pertaining to conduct prohibited by the Corrections Division:

"(14)   Attempt. No inmate shall knowingly engage in conduct which constitutes a substantial step toward the intentional commission of a rule(s) violation. * * *."

"(7)   Possession, Manufacture, or Use of Dangerous Contraband: Except as may be authorized by other rules, no inmate shall knowingly possess, manufacture, or use:

"(a)   Weapons,"

The Superintendent of the Oregon State Penitentiary approved the findings of the hearings officer and the petitioner was ordered to spend six months in segregation. The petitioner filed a petition for judicial review with the Court of Appeals which affirmed without opinion. 77 Or App 194, 712 P2d 186 (1985). This court now allows a part of a subsequent petition for review to consider only the issue set forth above.[1]

In April 1985 a corrections officer, while inspecting the petitioner's cell, discovered three blueprint drawings of a hand gun.[2] The hearings officer in his findings of fact described the drawings:

"Two of the 3 blueprint drawings contained numbered measurements with side, front, and top viewpoints; one of the 3 blueprint drawings depicted a frontal and side viewpoint, with no other entries. Each blueprint drawing outlined graphic

---

[1] The petitioner also asked this court to review the Court of Appeals opinion which affirmed a portion of the same order finding that he had also violated administrative rule 291-105-015 (5) (Unauthorized Possession of Property). The violation of subsection (5) of the rule concerns a different type of property and we elect to limit our review to the issue set out in the text above. ORAP 10.15.

[2] Although the hearings officer stated that he was entering the blueprints into the record, they did not find their way to this court.

pictures of the barrel, trigger mechanism, and firing pins, with accompanying and related measurements."

The petitioner took the position that because he had a college degree in drafting and a number of years of training in that field it was a challenge to him to design things. He testified:

"* * * I'm strictly a designer, I design houses, machines, weapons, bowls, all kinds of stuff, adding machines, as, as something to build myself up to when I can walk out of here, I'll have this entire portfolio of stuff that I can walk into an aircraft company and say look, this is what I'm capable of doing."

The petitioner testified further that he had previously drawn 50 or 60 designs and sent them out of the institution for his personal files without any trouble.

After the conclusion of the testimony, the hearings officer made the following finding:

"8. In the context of available information, including Inmate Dennison's training, cell assignment, and *accessibility to various products which could have been used to manufacture a weapon,* the Hearings Officer deems it reasonable to conclude that he did knowingly, initially take a substantial step towards the manufacture and eventual possession of dangerous contraband in the form of a weapon." (Emphasis added)

We have searched the record and find no evidence of any products inside the penitentiary "which could have been used to manufacture a weapon" as complicated as that set out in the petitioner's blueprints. In the record before us only the petitioner testified as to the "accessibility to various products," and his testimony is contrary to the hearing officer's findings. The petitioner argued in part as follows:

"[If] I'm going, I'm going to make a weapon that, this particular weapon would have to be (unintelligible) within hundredths of an inch, they don't even have a person in this place that's skilled enough to make that, they don't even have the proper material to make that here."

In connection with the complex nature of the gun design, the petitioner argued that more work was necessary before it could be manufactured:

"The simple fact is it isn't, it hasn't been engineered, there

hasn't been a working model made of it. See, for something that complex, you know, we're not talking a zip gun here, we're not talkin' we're talkin' about a semi-automatic pistol."

ORS 183.482(8)(c) requires the reviewing court to set aside an "order if it finds that the order is not supported by substantial evidence in the record."

In the context of this case[3] a violation of rule 291-105-015 (14) and (7)(a) necessarily requires that the manufacture of the contraband weapon be within the penitentiary. There being no evidence that necessary products or materials were accessible or available for the manufacture of the weapon within the penitentiary, that portion of the order holding the petitioner in violation of administrative rule 291-105-015 (14) and (7)(a) is set aside and the decision of the Court of Appeals is reversed in part.[4]

Reversed in part.

---

[3] The respondent does not contend that the petitioner was attempting to have the gun manufactured outside of the penitentiary and then smuggled inside. Nor does it contend that petitioner was attempting to have the necessary materials sent into the institution.

[4] The petitioner's brief in the Court of Appeals made the following argument:

"Petitioner merely possessed a rough draft or drawing of a weapon that could not be manufactured in the penitentiary. What if petitioner had drawn a picture of a gatling gun or an atomic bomb? Would he be guilty of violating the rule?"